IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| MURTAZA AMIR | ) | |
| | ) | No. 1:19-cv-307 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| PHARMAPHD, INC., | ) | |
| NUOVOPHARMA, INC., and | ) | |
| DAVID BILYEU | ) | |
| | ) | |
| Defendants. | ) | |

**COMPLAINT**

Comes now the Plaintiff, Murtaza Amir, by and through his counsel, Wooden Law Firm, P.C., and for his Complaint against the Defendants PharmaPhD, Inc., Nuovopharma, Inc., and David Bilyeu, hereby states as follows:

**I. THE PARTIES & JURISDICTION**

1.      Plaintiff Murtaza Amir is a resident of Allegany County, Maryland.  Plaintiff Murtaza Amir is medical doctor and a board certified neurologist.  He is sometimes referred to herein as "Dr. Amir".

2.      Defendant PharmaPhD, Inc. is a Delaware corporation with its principal place of business being located, at all times relevant hereto, at 7477 Commons Blvd., Apartment 1018, Chattanooga, Hamilton County, Tennessee 37421 or at 1807 Westland Drive SW, Cleveland, Bradley County, Tennessee 37312.  It may be served through its registered agent, United States

1

Corporation Agents, Inc., at the address of 300 Delaware Ave., Suite 210-A, Wilmington, Delaware, 19801.

3.      Defendant Nuovopharma, Inc. is a Delaware corporation with its principal place of business located at all times relevant hereto at 7477 Commons Blvd., Apartment 1018, Chattanooga, Hamilton County, Tennessee 37421 or at 1807 Westland Drive SW, Cleveland, Tennessee 37312.  It may be served through its registered agent, United States Corporation Agents, Inc. at the address of 300 Delaware Ave., Suite 210-A, Wilmington, Delaware 19801.

4.      Defendant David Bilyeu is a resident of Hamilton County, Tennessee.

5.      At all times relevant hereto, Defendant David Bilyeu was the majority shareholder and chief executive officer of Defendants Nuovopharma, Inc. and PharmaPhD, Inc.

6.      Both Defendant Nuovopharma, Inc. and Defendant PharmaPhd, Inc. are closely-held corporations, whose shares of stock are not publically traded on a stock exchange.

7.      Defendant Nuovopharma, Inc. and Defendant PharmaPhd, Inc. are sometimes collectively referred to herein as the "Corporate Defendants".

8.      Jurisdiction is proper pursuant to 28 USC § 1332 and venue is proper in this Court pursuant to 28 USC § 1391.

## II.  FACTUAL BACKGROUND

9.      Plaintiff re-alleges the allegations contained in Paragraphs 1-8 as though fully set forth herein.

10.     On October 22, 2016, Defendant NuovoPharma, Inc. and Plaintiff Murtaza Amir entered into a Loan Agreement (the "Amir – Nuovopharma, Inc. Loan Agreement").  A true and

correct copy of the Amir – Nuovopharma, Inc. Loan Agreement is attached hereto as "Exhibit A".

11.     Pursuant to the Amir – Nuovopharma, Inc. Loan Agreement, Dr. Amir agreed to loan the amount of $125,000.00 to NuovoPharma, Inc., which Defendant Nuovopharma, Inc. agreed to repay at an annual interest rate of 15% over a repayment term of three years.

12.     Prior to entering and executing the Amir – Nuovopharma, Inc. Loan Agreement, Defendant Nuovopharma, Inc. by and through its agent and alter ego, Defendant David Bilyeu, falsely led Dr. Amir to believe that the loan would be repaid, when Defendant Nuovopharma, Inc. and David Bilyeu had no intention to repay this loan.

13.     As collateral to secure the repayment of the Amir – Nuovopharma, Inc. Loan, David Bilyeu provided Dr. Amir a certain purported stock certificate for one hundred twenty-five thousand (125,000) shares of stock in Nuovopharma, Inc., which was signed by David Bilyeu and his son Tyler Bilyeu. A true and correct copy of this stock certificate is attached hereto as "Exhibit B".

14.     On October 22, 2016, Defendant PharmaPhD, Inc. and Dr. Amir entered into a Loan Agreement (the "Amir – PharmaPhD, Inc. Loan Agreement"). A true and correct copy of the Amir – PharmaPhD, Inc. Loan Agreement is attached hereto as "Exhibit C".

15.     Pursuant to the Amir – PharmaPhD, Inc. Loan Agreement, Dr. Amir agreed to loan the amount of $125,000.00 to PharmaPhD, Inc., which Defendant Pharma PhD, Inc. agreed to repay at an annual interest rate of 15% over a repayment term of five years.

16.     Prior to entering into and executing the Amir – PharmaPhD, Inc. Loan Agreement, Defendant PharmaPhD, Inc. by and through its agent and alter ego, Defendant David

Bilyeu, falsely led Dr. Amir to believe that the loan would be repaid, when Defendant PharmaPhD, Inc. and David Bilyeu had no intention to repay this loan.

17.     As collateral to secure the repayment of the Amir – PharmaPhD, Inc. Loan, David Bilyeu provided Dr. Amir a certain purported stock certificate for one hundred twenty-five thousand (125,000) shares of stock in PharmaPhD, Inc., which was signed by David Bilyeu and his son, Tyler Bilyeu.  A true and correct copy of this stock certificate is attached hereto as "Exhibit D".

18.     The Amir – Nuovopharma, Inc. Loan Agreement and the Amir – PharmaPhd, Inc. Loan Agreement are collectively referred to herein as the "Amir Loan Agreements" and the consummated Amir Loan Agreement transactions are sometimes referred to herein as the "Amir Loans".

19.     Upon Dr. Amir's information and belief, Tyler Bilyeu, Defendant David Bilyeu's son, was not lawfully elected or appointed as a corporate officer of either Corporate Defendant.

20.     To perpetuate his misrepresentation that the Amir Loans would be repaid, Defendant Bilyeu provided Dr. Amir with a fictitious loan repayment schedule after Dr. Amir had provided the loaned funds to the Defendants.

21.     Dr. Amir reasonably relied upon material misrepresentations made by Defendant David Bilyeu as agent and alter ego of the Corporate Defendants on October 20, 2019 to induce Dr. Amir to enter into the Amir Loan Agreements.

22.     The material misrepresentations made by Defendant David Bilyeu include false statements that the Amir Loans would be repaid with interest, that the stock certificates that served as the purported collateral were valid (when they were not), that Dr. Amir would be able to treat the loans as being tax deductible, and that Defendant David Bilyeu had a venture

4

capitalist who desired to take the Corporate Defendants public and open the shares at $5.00 per share if Dr. Amir did not loan the funds.

23.     The Corporate Defendants by and through their agent and alter ego, Defendant David Bilyeu, induced Dr. Amir to loan the funds for the Amir Loans to the Corporate Defendants with no intention of repaying the Amir Loans once the Corporate Defendants and David Bilyeu received the loan proceeds from Dr. Amir.

24.     No payments have made by either of the Corporate Defendants or Defendant David Bilyeu to Dr. Amir on any of the Amir Loans.

25.     On or about February 4, 2019, Dr. Amir discovered that Defendant David Bilyeu had misappropriated the funds loaned by Dr. Amir to the Corporate Defendants to support Defendant Bilyeu's personal lifestyle including payments to Hooters restaurant, dating website(s), vacations, payments related to his son's education, and other expenditures that benefited only his own personal interests.

26.     On or about February 4, 2019, Dr. Amir further discovered that Defendant David Bilyeu had used funds loaned by Dr. Amir from the Corporate Defendants to renovate Defendant Bilyeu's personal real estate.

27.     On or about February 4, 2019, Dr. Amir further discovered that Defendant David Bilyeu had paid insurance bills for another one of his companies from the funds loaned by Dr. Amir to the Corporate Defendants.

28.     On or about February 4, 2019, Dr. Amir learned that the purported stock certificates provided to him by David Bilyeu as collateral to the Amir Loans were invalid and/or worthless.

5

29. Defendant David Bilyeu intentionally attempted to conceal his personal use of the funds loaned by Dr. Amir to the Corporate Defendants by refusing to provide Dr. Amir with any balance sheet for either Corporate Defendant despite Dr. Amir's requests that he do so on October 27, 2017.

30. Defendant David Bilyeu further intentionally attempted to conceal his personal use of the funds loaned by Dr. Amir to the Corporate Defendants by falsely stating to Dr. Amir on April 22, 2017 that Defendant Bilyeu had made more than 150 business trips for the Corporate Defendants.

31. On or about June 25, 2019, the Plaintiff requested by certified mail, both Corporate Defendants and Defendant David Bilyeu to refund to him the loaned funds in the aggregate amount of $250,000.00 in exchange for returning to each Corporate Defendant the purported stock certificates Plaintiff was provided as collateral.

32. To date, none of the Defendants have accepted the tender of the purported stock certificates.

33. To date, none of the Defendants have refunded any portion of the $250,000.00 loaned by Dr. Amir to the Corporate Defendants.

## III. CLAIMS

### COUNT I – RESCISSION OF THE AMIR LOAN AGREEMENTS

### AGAINST THE CORPORATE DEFENDANTS

34. Plaintiff re-alleges the allegations contained in Paragraphs 1-33 as though fully set forth herein.

35.     Both of the Amir Loan Agreements contain an unconscionable provision in Section 4 that states: "If the Borrower fails to make scheduled payments or repayment [sic] the loan and interest in the timeline provided, the collateral will become the property of the Loaner."

36.     Since the "collateral" was invalid and/or worthless at the time of the Amir Loan Agreements and remains worthless, the above provision in Section 4 of the Amir Loan Agreements is so grossly unequal, oppressive, and unilaterally in favor of the Corporate Defendants and Defendant Bilyeu that it is unconscionable and is further indicia of the fraud committed against Dr. Amir.

37.     Section 12 of the Amir Loan Agreements states:

> "The Loaner agrees to indemnify and hold harmless the Borrower, its affiliates and each person controlling Borrower (within the meaning of Section 15 of the Securities Act), and the directors, officers, agents and employees of Borrower, its affiliates and each such controlling person (Borrower, and each such entity or person an "Indemnified Person") from and against any losses, claims, damages, judgments, assessments, costs and other liabilities (collectively, the "Liabilities").  This loan is an [sic] … risk loan and the Borrower has provided the stock as the only collateral in lieu of payback."

38.     The above provisions in Section 12 of the Amir Loan Agreements purport to burden Dr. Amir, the lender in both agreements, with a unilateral indemnity obligation in favor of the Corporate Defendants and David Bilyeu even though Dr. Amir was lending a total of $250,000.00 to the Corporate Defendants between both of the Amir Loans.

39.     The above provisions in Section 12 of both of the Amir Loan Agreements are so grossly unequal, oppressive, and unilaterally in favor of the Corporate Defendants and Defendant Bilyeu that they are unconscionable and are further indicia of the fraud committed against Dr. Amir.

40.     Defendant David Bilyeu, individually and through the conduits of the Corporate Defendants, knowingly made false representations to Dr. Amir concerning facts material to the Amir Loan Agreement transactions to induce Dr. Amir to enter into and consummate the Amir Loan Agreement transactions.

41.     When knowingly making these false representations, Defendant David Bilyeu intended to induce Dr. Amir to rely upon such statements so that Dr. Amir would tender $125,000.00 in funds to Defendant Nuovopharma, Inc., which David Bilyeu subsequently siphoned away from Nuovopharma, Inc. for his personal use, causing Dr. Amir to sustain damages in excess of $125,000.00.

42.     When knowingly making these false statements and representations, Defendant David Bilyeu intended to induce Dr. Amir to rely upon such statements so that Dr. Amir would tender $125,000.00 in funds to Defendant PharmaPhD, Inc., which David Bilyeu subsequently siphoned away from PharmaPhD, Inc. for his personal use, causing Dr. Amir to sustain damages in excess of $125,000.00.

43.     Dr. Amir reasonably relied upon Defendant David Bilyeu's misrepresentations because he trusted Defendant Bilyeu given his entrepreneurial experience that he touted to Dr. Amir and Dr. Amir had no reason to believe that the statements were false at the time he loaned the funds to the Corporate Defendants.

44.     Dr. Amir was fraudulently induced by Defendant David Bilyeu to enter into the Amir – PharmaPhD, Inc. Loan Agreement and the Amir – Nuovopharma, Inc. Loan Agreement; accordingly, both of such contracts should be rescinded in their entirety.

45.     In the alternative, the Amir – Nuovopharma, Inc. Loan Agreement and the PharmaPhD, Inc. Loan Agreement should both be rescinded due to their unconscionability.

46.     In the alternative, Sections 4 and 12 in both of the Amir Loan Agreements should be declared void and unenforceable by the Court due to their unconscionability.

## COUNT II – COMMON LAW FRAUD

### AGAINST ALL DEFENDANTS

47.     Plaintiff re-alleges the allegations contained in Paragraphs 1-46 as though fully set forth herein.

48.     The Corporate Defendants, by and through their alter ego, David Bilyeu, intentionally made material misrepresentations of fact to Dr. Amir, or made such misrepresentations with reckless disregard to their falsity.

49.     Dr. Amir reasonably relied to his detriment on the false representations, causing Dr. Amir to tender $125,000.00 to Defendant Nuovopharma, Inc. and $125,000.00 to Defendant PharmaPhd, Inc.

50.     At least $213,612.95 of the funds loaned by Dr. Amir were subsequently misappropriated and used by David Bilyeu to fund his personal lifestyle expenses.

51.     As a direct and proximate result of the intentional or reckless misrepresentations of David Bilyeu, individually and by and through the Corporate Defendants, and Dr. Amir's reasonable reliance thereon, Dr. Amir suffered the loss of $125,000.00 of funds to Nuovopharma, Inc. and $125,000.00 of funds to PharmaPhD, Inc. loaned in reliance upon the Defendants' false pretenses.

52.     None of the funds loaned by Dr. Amir to the Corporate Defendants have been repaid by either of the Corporate Defendants or Defendant David Bilyeu.

53.     As a direct and proximate result of the fraud(s) described herein, Dr. Amir has sustained damages of $250,000.00 plus prejudgment interest.

54.     In the alternative, in the event that the Court determines that Dr. Amir is a stockholder of Nuovopharma, Inc. and PharmaPhD, Inc., then Defendant David Bilyeu owed Dr. Amir a fiduciary duty to disclose the fact that he was withdrawing substantial funds from Nuovopharma, Inc. and PharmaPhD, Inc. to pay his personal expenses and his failure to disclose to Dr. Amir that he was doing so constitutes fraudulent concealment.

55.     Accordingly, as a direct and proximate result of Defendant David Bilyeu's fraudulent concealment committed against Dr. Amir, Dr. Amir has sustained damages of $250,000.00 plus prejudgment interest.

### COUNT III – NEGLIGENT MISREPRESENTATION

### AGAINST ALL DEFENDANTS

56.     Plaintiff re-alleges the allegations contained in Paragraphs 1-55 as though fully set forth herein.

57.     Defendant Nuovopharma, Inc. owed a legal duty to Dr. Amir to refrain from providing false or misleading information to Dr. Amir, because Nuovopharma, Inc. had a pecuniary interest in obtaining the Amir – Nuovopharma, Inc. loan from Dr. Amir.

58.     Defendant Nuovopharma, Inc. breached its duty to Dr. Amir by misrepresenting to Dr. Amir by and through its agent and alter ego, Defendant David Bilyeu that the Amir Loan Agreements were loans that would be repaid and by subsequently providing fictitious loan repayment schedules to Dr. Amir, when Defendant Bilyeu and the Corporate Defendants had no intention to repay the Amir Loans once they received the loaned funds from Dr. Amir.

59.     Dr. Amir justifiably relied upon the misinformation that was provided by Nuovopharma, Inc. by and through its agent and alter ego, Defendant David Bilyeu, because Dr. Amir trusted Defendant David Bilyeu given his extensive entrepreneurial experience that he touted to Dr. Amir.

60.     As a direct and proximate result of the misrepresentations made by Nuovopharma, Inc. by and through its agent and alter ego, Defendant David Bilyeu, Dr. Amir suffered damages in excess of $125,000.00.

61.     Defendant PharmaPhD, Inc. owed a legal duty to Dr. Amir to refrain from providing false or misleading information to Dr. Amir, because PharmaPhD, Inc. had a pecuniary interest in obtaining the Amir – PharmaPhD, Inc. loan from Dr. Amir.

62.     Defendant PharmaPhD, Inc. breached its duty to Dr. Amir by misrepresenting to Dr. Amir by and through its agent and alter ego, Defendant David Bilyeu that the Amir Loan Agreements were loans that would be repaid and by subsequently providing fictitious loan repayment schedules to Dr. Amir, when Defendant Bilyeu and the Corporate Defendants had no intention to repay the Amir Loans once they received the loaned funds from Dr. Amir.

63.     Dr. Amir justifiably relied upon the misinformation that was provided by PharmaPhD, Inc. by and through its agent and alter ego, Defendant David Bilyeu, because Dr. Amir trusted Defendant David Bilyeu given his extensive entrepreneurial experience.

64.     As a direct and proximate result of the misrepresentations made by PharmaPhD, Inc. by and through its agent and alter ego, Defendant David Bilyeu, Dr. Amir suffered damages in excess of $125,000.00.

## COUNT IV – SECURITIES FRAUD UNDER SECTION 10(B) OF THE SECURITIES EXCHANGE ACT OF 1934 AND RULE 10B-5

### AGAINST ALL DEFENDANTS

65.     Plaintiff re-alleges the allegations contained in Paragraphs 1-64 as though fully set forth herein.

66.     Should the Court determine that the Amir Loan Agreements constitute securities, then, the Corporate Defendants, by and through their representative and alter ego, Defendant David Bilyeu, also engaged in securities fraud against Dr. Amir in violation of 15 U.S.C. § 78j(b) (Section 10(b) of the Securities Exchange Act of 1934) and 17 C.F.R. § 240.10b-5 (Rule 10b-5).

67.     On or about October 20, 2016, the Corporate Defendant's agent and alter ego David Bilyeu, knowingly misrepresented  that the Amir Loans would be repaid with interest, that the stock certificates that served as the purported collateral were valid (when they were not), that Dr. Amir would be able to treat the loans as being tax deductible, and that Defendant Bilyeu had a venture capitalist who desired to take the Corporate Defendants public and open the shares at $5.00 per share if Amir did not loan the funds.

68.     Defendant David Bilyeu as the agent and alter ego of the Corporate Defendants made such misrepresentations with the intent to deceive or defraud Dr. Amir, or at a minimum, Defendant Bilyeu recklessly made such statements to Dr. Amir without regard for their truth or falsity.

69.     In making the misrepresentations at issue, the Corporate Defendants by and through their agent and alter ego, Defendant David Bilyeu, used means or instrumentalities of interstate commerce because Defendant David Bilyeu communicated some of the

12

misrepresentations at issue by use of interstate phone call(s) to Dr. Adnan Qayyum who relayed such information to Dr. Amir.

70.     Dr. Amir justifiably and reasonably relied upon the misrepresentations of David Bilyeu when he loaned $125,000.00 to Defendant Nuovopharma, Inc. and $125,000.00 to Defendant PharmaPhd, Inc. based on such misrepresentations.

71.     None of the Defendants made any payments to Dr. Amir on the Amir Loan Agreements. Accordingly, the fraudulent misrepresentations of the Defendants proximately caused Dr. Amir to sustain damages in excess of $250,000.00.

72.     Accordingly, Dr. Amir requests that the Court award him rescissory damages in the amount of $250,000.00 plus prejudgment interest at the maximum amount permitted under applicable law.

73.     Since Defendant David Bilyeu exercised complete control over both Corporate Defendants for example by filing tax returns, signing important legal documents on behalf of each of the Corporate Defendants, exercising exclusive control of the bank accounts of the Corporate Defendants and using such accounts as his personal checking and debit card accounts, and making payments from the Corporate Defendants' accounts, David Bilyeu is a "controlling person" of each Corporate Defendant pursuant to 15 USC § 78t(a) (Section 20(a) of the Securities and Exchange Act of 1934).

74.     As a controlling person, Defendant David Bilyeu must be held jointly and severally liable for any judgment rendered by this Court against each Corporate Defendant pursuant to 15 USC § 78t(a) (Section 20(a) of the Securities and Exchange Act of 1934).

## COUNT V – SECURITIES FRAUD UNDER T.C.A. §§ 48-1-121 & 48-1-122

### AGAINST ALL DEFENDANTS

75.     Plaintiff re-alleges the allegations contained in Paragraphs 1-74 as though fully set forth herein.

76.     In the alternative, should the Court determine that the Amir Loan Agreements are securities, then, the Corporate Defendants, by and through their representative and alter ego, Defendant David Bilyeu, also engaged in securities fraud against Dr. Amir in violation of Tenn. Code Ann. §§ 48-1-121 and 48-1-122.

77.      On or about October 20, 2016, the Corporate Defendants' agent and alter ego David Bilyeu, knowingly made misrepresentations to Dr. Amir that the Amir Loans would be repaid with interest, that the stock certificates that served as the purported collateral were valid (when they were not), that Dr. Amir would be able to treat the loans as being tax deductible, and that Defendant David Bilyeu had a venture capitalist who desired to take the Corporate Defendants public and open the shares at $5.00 per share if Dr. Amir did not loan the funds.

78.     Defendants had no intention to repay such loans once they received the funds from Dr. Amir, or at a minimum, Defendant David Bilyeu made such statements to Dr. Amir with reckless disregard to their falsity.

79.     Dr. Amir justifiably and reasonably relied upon the misrepresentations of David Bilyeu when he loaned $125,000.00 to Defendant Nuovopharma, Inc. and $125,000.00 to Defendant PharmaPhd, Inc. based on such misrepresentations.

80.     None of the Defendants made any payments to Dr. Amir on the Amir Loan Agreements, which has directly and proximately caused Dr. Amir to sustain damages of $250,000.00.

14

81.     Since David Bilyeu exercised complete control over both Corporate Defendants for example by filing tax returns, signing important legal documents on behalf of each of the Corporate Defendants, exclusively controlling the bank accounts of the Corporate Defendants and using such accounts as his personal checking and debit card accounts, and making payments from the Corporate Defendants' accounts, David Bilyeu is a "controlling person" of each Corporate Defendant pursuant to Tenn. Code Ann. § 48-1-122(g).

82.     As a controlling person, Defendant David Bilyeu must be held jointly and severally liable for any judgment rendered by this Court against each Corporate Defendant pursuant to Tenn. Code Ann. § 48-1-122(g).


### COUNT VI – BREACH OF FIDUCIARY DUTY OF OFFICER OR DIRECTOR
### AGAINST DEFENDANT DAVID BILYEU

83.     Plaintiff re-alleges the allegations contained in Paragraphs 1-82 as though fully set forth herein.

84.     In the alternative, should the Court determine that the Amir Loan Agreements are valid and that the stock certificates given by Defendant Nuovopharma, Inc. and PharmaPhD, Inc. to Dr. Amir are valid and Dr. Amir is determined by the Court to be a shareholder of Defendant Nuovopharma, Inc. and PharmaPhD, Inc, then Defendant David Bilyeu owed a fiduciary duty to Dr. Amir as a shareholder.

85.     At all times relevant hereto, Defendant David Bilyeu was an officer and/or director of both Corporate Defendants.

86.     Defendant David Bilyeu breached his fiduciary duty to Dr. Amir by misappropriating the funds that Dr. Amir loaned to the Corporate Defendants for Defendant Bilyeu's personal use.

87.     Defendant David Bilyeu's breach of his fiduciary duty to Dr. Amir was the proximate cause of the damages sustained by Dr. Amir in an amount of approximately $213,612.95.

## COUNT VII – BREACH OF FIDUCIARY DUTY OF MAJORITY SHAREHOLDER
## AGAINST DEFENDANT DAVID BILYEU

88.     Plaintiff re-alleges the allegations contained in Paragraphs 1-87 as though fully set forth herein.

89.     In the alternative, should the Court determine that the Amir Loan Agreements are valid and that the stock certificates given by Defendant Nuovopharma, Inc. to Dr. Amir are valid and Dr. Amir is determined by the Court to be a shareholder of Defendant Nuovopharma, Inc., then Dr. Amir would be a minority shareholder of such corporation.

90.     Upon Dr. Amir's information and belief, Defendant David Bilyeu was the majority shareholder of Nuovopharma, Inc. during all times relevant hereto.

91.     Defendant David Bilyeu, as a majority shareholder, owed a fiduciary duty to Dr. Amir.

92.     Defendant David Bilyeu breached his fiduciary duty to Dr. Amir by misappropriating to his personal use of approximately $110,957.87 of funds of Nuovopharma, Inc., which Dr. Amir loaned to the corporation.

93.     Defendant David Bilyeu's breach of his fiduciary duty directly and proximately caused Dr. Amir as a minority shareholder of Nuovopharma, Inc. to sustain damages in excess of $110,957.87.

94.     Upon Dr. Amir's information and belief, Defendant David Bilyeu was the majority shareholder of PharmaPhD, Inc. during all times relevant hereto.

95.     In the alternative, should the Court determine that the Amir Loan Agreements are valid and that the stock certificates given by Defendant PharmaPhD, Inc. to Dr. Amir are valid and Dr. Amir is determined by the Court to be a shareholder of Defendant PharmaPhD, Inc, then Dr. Amir would be a minority shareholder.

96.     David Bilyeu, as majority shareholder, owed a fiduciary duty to Dr. Amir.

97.     Defendant David Bilyeu, as a majority shareholder, breached his fiduciary duty to Dr. Amir by misappropriating to his personal use approximately $102,655.08 of funds of PharmaPhD, Inc., which Dr. Amir loaned to the corporation.

98.     Defendant David Bilyeu's breach of his fiduciary duty directly and proximately caused Dr. Amir, as a minority shareholder of PharmaPhD, Inc., to sustain damages of approximately $102,655.08.

## COUNT VIII – PUNITIVE DAMAGES

## AGAINST DEFENDANT DAVID BILYEU

99.     Plaintiff re-alleges the allegations contained in Paragraphs 1-98 as though fully set forth herein.

100.     The tortious actions of David Bilyeu committed against Dr. Amir as described above, were intentional, fraudulent, and/or were committed with reckless disregard of Dr. Amir's rights and were sufficiently egregious to warrant the imposition of punitive damages against him.

## COUNT IX – BREACH OF CONTRACT

### AGAINST THE CORPORATE DEFENDANTS

101.     Plaintiff re-alleges the allegations contained in Paragraphs 1-100 as though fully set forth herein.

102.     In the event that the Court does not rescind the Amir Loan Agreements in their entirety, the Corporate Defendants have materially breached the Amir Loan Agreements by failing to make any loan payments to Dr. Amir.

103.     The breach of the Corporate Defendants has caused Dr. Amir to incur damages in excess of $250,000.00 plus prejudgment interest of fifteen percent (15%) per year, as provided under the Amir Loan Agreements, or the highest amount permitted under Tennessee law, whichever is less.

## COUNT X – UNJUST ENRICHMENT

### AGAINST ALL DEFENDANTS

104.     Plaintiff re-alleges the allegations contained in Paragraphs 1-103 as though fully set forth herein.

105.     In the alternative, should the Court determine that the Amir Loan Agreements are not valid or enforceable, then the Corporate Defendants and Defendant David Bilyeu were unjustly enriched by the retention of an amount of approximately $213,612.95 in funds loaned by

Dr. Amir to the Corporate Defendants, which were spent by David Bilyeu on his personal expenses.

106. Therefore, the Court should award damages to Dr. Amir in an amount of $213,612.95 together with prejudgment interest so that the Corporate Defendants and David Bilyeu are not unjustly enriched.

## COUNT XI – PIERCING THE CORPORATE VEIL

### AGAINST ALL DEFENDANTS

107. Plaintiff re-alleges the allegations contained in Paragraphs 1-106 as though fully set forth herein.

108. Defendant David Bilyeu utilized the Corporate Defendants as a subterfuge of fraud to obtain funds from Dr. Amir and then divert such funds to pay his own personal expenses.

109. Both Corporate Defendants were grossly undercapitalized for the corporate undertaking.

110. The corporate formalities of both Corporate Defendants were not followed by Defendant David Bilyeu and its other officers and directors.

111. Both Corporate Defendants were a sham and were mere alter egos of Defendant David Bilyeu under David Bilyeu's control as is shown by David Bilyeu's exclusive control of the bank accounts of both Corporate Defendants and his use of such accounts as his personal checking and debit card accounts.

112. The stock certificates issued by the Corporate Defendants and Defendant David Bilyeu to Dr. Amir as purported "collateral" were phony, invalid, or at a minimum, worthless.

19

113. Both Corporate Defendants were operated by Defendant David Bilyeu as a single and common business enterprise with a common nerve center, common officers and as the alter ego of David Bilyeu.

114. The funds of each Corporate Defendant were commingled between them and the funds of the Corporate Defendants were commingled with Defendant David Bilyeu's personal funds.

115. Accordingly, the corporate veil of both Corporate Defendants must be both horizontally pierced between the Corporate Defendant entities and vertically pierced against David Bilyeu, personally, so that each Corporate Defendant and Defendant David Bilyeu may be held personally liable for the damages Defendant David Bilyeu caused to Dr. Amir through the conduit of both Corporate Defendants.

WHEREFORE the Plaintiff, Murtaza Amir, requests that this Honorable Court grant the following relief:

a. That process issue and be served upon the Defendants requiring them to answer this Complaint in the time allowed by law; and

b. Rescind the Amir Loan Agreements and require the Corporate Defendants and David Bilyeu to repay the $250,000.00 to Plaintiff Murtaza Amir; and

c. In the alternative, declare Sections 4 and 12 of the Amir Loan Agreements void and award compensatory damages in the amount of $250,000.00 for breach of contract; and

d. In the alternative, award compensatory damages in the amount of $250,000.00 to Plaintiff Murtaza Amir for the fraud committed against him by the Corporate Defendants and Defendant David Bilyeu;

e.      In the alternative, award compensatory damages in the amount of $250,000.00 to Plaintiff Murtaza Amir for the negligent misrepresentation committed against him by the Corporate Defendants and Defendant David Bilyeu; and

f.      In the alternative, and in the event that the Court deems the Amir Loan Agreements to be securities, then award rescissory damages in the amount of $250,000.00 pursuant to Section 10(b) of the Securities Exchange Act of 1934 (15 U.S.C. § 78j(b)) and Rule 10b-5 (17 C.F.R. § 240.10b-5) plus prejudgment interest at the maximum amount permitted under applicable law and hold Defendant David Bilyeu jointly and severally liable as a controlling person of each Corporate Defendant pursuant to Section 20(a) of the Securities and Exchange Act of 1934 (15 USC § 78t(a)); and

g.      In the alternative, should the Court deem the Amir Loan Agreements to be securities, then award rescissory damages to Plaintiff in the amount of $250,000.00 pursuant to T.C.A. §§ 48-1-121(a) & 48-1-122(a) plus prejudgment interest at the maximum amount permitted under applicable law and hold Defendant David Bilyeu jointly and severally liable for any judgments entered by the Court against each Corporate Defendant pursuant to Tenn. Code Ann. § 48-1-122(g); and

h.      Should the Court determine Plaintiff to be a shareholder of Defendant Nuovopharma, Inc., then award damages in an amount in excess of $110,957.87 to Plaintiff for Defendant David Bilyeu's breach of his fiduciary duty as an officer and director of Defendant Nuovopharma, Inc.; and

i.      Should the Court determine Plaintiff to be a shareholder of Defendant PharmaPhD, Inc., award damages in an amount in excess of $102,655.08 to Plaintiff Murtaza

Amir for David Bilyeu's breach of his fiduciary duty as a majority shareholder of Defendant PharmaPhD, Inc.; and

  j.  Award Plaintiff punitive damages against each Defendant in the amount of $1,000,000.00 for the fraud and/or other torts committed against the Plaintiff; and

  k.  In the alternative, should the Court determine that the Amir Loan Agreements are not valid or enforceable, award compensatory damages in an amount in excess of $213,612.95 against the Defendants for unjust enrichment; and

  l.  Award Plaintiff his reasonable attorney's fees and costs of brining this action, pursuant to Tenn. Code Ann. § 48-1-122(f) against each Defendant; and

  m.  Assess prejudgment and post-judgment interest in the maximum percentage allowed under Tennessee law against each Defendant that the Court finds liable to Plaintiff Murtaza Amir; and

  n.  Horizontally pierce the corporate veil of each of the Corporate Defendants and hold each Corporate Defendant liable for damages assessed by the Court against the other; and

  o.  Vertically pierce the corporate veil of both Defendant Nuovopharma, Inc. and Defendant PharmaPhD, Inc. and hold Defendant David Bilyeu personally liable for any and all judgments that the Court may award against each such Corporate Defendant; and

  p.  Tax the costs of this matter to Defendants; and

  q.  Grant Plaintiff Murtaza Amir such other and further relief which this Court deems just, equitable, and proper.

Respectfully submitted, this 29th day of October, 2019

WOODEN LAW FIRM, P.C.

By:   /s/ Tracy C. Wooden
      Tracy C. Wooden (BPR # 014169)
      The James Building
      735 Broad Street, Suite 900
      Chattanooga, TN 37402
      Telephone: (423) 756-9972
      Facsimile: (423) 756-9943
      Email: tracywooden@woodenlaw.com

*Attorneys for Plaintiff*